UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

SHARON L. PETTIT,                                              Case No. 05-19986-ta7

      Debtor.

## OPINION

Before the Court is Debtor's motion for an order that its mortgagee cannot charge for certain attorney fees incurred after her chapter 13 case was filed and must apply all payments received post-petition in accordance with the confirmed chapter 13 plan. The mortgagee counters that Debtor's arguments lack merit because the case was converted to chapter 7 before plan completion. The matter has been fully briefed and argued. The Court finds that the mortgagee acted within its right because of the conversion before plan completion. Therefore, Debtor's request for relief will be denied, except that the Court will hold mortgagee to the agreements it made in two stipulated orders.

                    I.         FACTS

The Court finds:[1]

On December 4, 2000, debtor Sharon L. Pettit signed a $64,500 promissory note in favor of PHH Mortgage Corporation ("PHH"), secured by a first mortgage on Debtor's house. The mortgage provides in part:

> 3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first to any prepayment charges due under the note; second to amounts payable under

---

[1] The Court took judicial notice of the docket in the bankruptcy case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

paragraph 2 [funds for taxes and insurance]; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

. . . .

      7. Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce law or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lenders action may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

      Any amounts disbursed by Lender under this paragraph 7 shall become additional debt or Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender requesting payment.

Debtor filed this case under chapter 13 on October 12, 2005, scheduling PHH as an oversecured creditor. Three days later she filed a chapter 13 plan, which provides:

2. <u>Distribution of Payments</u>. The trustee shall apply each payment received as follows:

      2(a) First, pro rata, to the trustee's commission and expenses and the balance of any payments to allowed administrative expenses referred to in § 507(a)(1), until paid in full. Attorney's fees shall be claimed for work upon application and order, and such claim for attorney's fees to the extent approved by the Court, shall be included and paid pursuant to the order of the Court.

      2(b) Second, until paid in full, the mortgage arrearages set forth below:

| Creditor | Type of claim | Collateral | Collateral value or claim amount | Post-confirmation interest rate |
|---|---|---|---|---|
| Cendant Mortgage Corp. Aka PHH Mortgage Services 6000 Atrium Way Mount Laurel, NJ 08054 | First Mortgage | 11416 Constitution Ave. NE Albuquerque, NM | $10,8583.28 [sic] | 7.625& [sic] |

-2-

. . . .

The terms of the Debtor's prepetition agreement with the secured creditor shall continue to apply, except as otherwise provided for in this plan or the confirmation order.

. . . .

4. Payments Outside the Plan. The Creditors' claims listed below are either fully secured or are secured only by a security interest in real property that is the Debtor's principal residence. The Debtor shall pay directly to the affected creditor the regular payment due postpetition on these claims in accordance with the terms of their respective contracts and list any prepetition arrearages in paragraph 2(h).

| Creditor | Amount of Claim (State if None) |
|---|---|
| Cendant Mortgage Corp.<br>c/o USAA Savings Bank<br>P.O. Box 0112<br>Palatine, IL 60055-0112 | $61,436.32 |

PHH filed a proof of claim on October 21, 2005, for $61,321.06, which included a $12,249.35 petition date arrearage. PHH itemized the arrearage as follows:

| | |
|---|---|
| Payments: 2@ $686.99 (December 1, 2004 to January 1, 2005): | $1,373.98 |
| Payments: 9@ $680.71 (February 1, 2005 to October 1, 2005): | $6,126.39 |
| Late charges: | $ 90.36 |
| Escrow shortage: | $ 948.91 |
| Foreclosure attorney fees | $1,441.13 |
| Foreclosure attorney costs: | $1,201.08 |
| Previous bankruptcy attorney fees: | $1,067.50 |
| Total | $12,249.35 |

On November 7, 2005, PHH objected to the plan, arguing that it understated the pre-petition mortgage arrearage by $1,396.07. Ten days later PHH filed a motion for relief from automatic stay, alleging:

The Debtor has three (3) post-petition payments due from November 1, 2005 through January 1, 2006 of $680.71 each, totaling $2,042.13, plus three (3) late charges of $30.12 each, totaling $90.36, plus bankruptcy attorney fees of $907.37,

plus bankruptcy attorney costs of $150,00, for a total of $3,189.87, plus accrued interest and all attorney fees and costs.[2]

On May 18, 2006, the Court entered a confirmation order that was agreed to by the Debtor, the chapter 13 trustee, and PHH. The confirmation order provides:

> PHH Mortgage Services shall be paid in full for the arrearages on the mortgage pursuant to its proof of claim in the amount of $12,249.35, with a post confirmation interest rate of 7.625%. The total amount owing on the mortgage at the time this case was filed was $61,321.06.

PHH filed a second stay relief motion on December 28, 2006, alleging:

> The Debtor has two (2) post-petition payments due from November 1, 2006 through December 1, 2006 of $680.71 each, totaling $1,361.42, plus two (2) late charges of $30.12 each, totaling $60.24, plus bankruptcy attorney fees of $650.00, plus bankruptcy attorney costs of $150.00, less a credit of <$50.24> for a total of $2,171.42, plus accrued interest and all attorney fees and costs.[3]

PHH filed a third stay relief motion on May 21, 2008, alleging:

> The Debtor is past due for post-petition payments from April 1, 2008 through May 1, 2008, consisting of two (2) payments at $680.71 each, for a total payment arrears amount due of $1,361.42, plus late charges of $60.24, plus bankruptcy attorney fees and costs of $844.69, less a credit of <$337.92>, for a total arrears amount of $1,928.43, plus accrued interest and all continuing fees and costs.

The third stay motion was resolved by the entry, on August 11, 2008, of a Stipulated Order Modifying Automatic Stay and for Abandonment of Property.[4] The stipulated order provided:

> Debtor will bring current her Note and Mortgage for attorney's fees and costs in the amount of $844.69 incurred by PHH Mortgage in connection with the post-petition default, less a credit of <$337.92>, for a total due of $506.77, through July 30, 2008. Payments will be made by cashier's checks delivered to: PHH Mortgage Services Corporation 8120 Nations Way Suite 100 Jacksonville, FL 32256 The first payment of $84.47 is due by August 15, 2008, the second payment of $84.46 is due by September 15, 2008, the third payment of $84.46 is due by October 15, 2008, the fourth payment of $84.46 is due by November 15, 2008, the fifth payment of $84.46 is due by December 15, 2008, and the final payment of $84.46 is due by January 15, 2009. The total payment of $506.77 is due by January 15,

---

[2] PHH withdrew the motion on February 8, 2006.
[3] PHH withdrew the motion on February 21, 2007.
[4] This order and the confirmation order are sometimes referred to together as the "Agreed Orders."

2009. Debtor shall continue to make her regular monthly payments in the amount of $711.44 (unless otherwise notified by PHH Mortgage) beginning with the September 1, 2008 mortgage payment and thereafter.

PHH filed a notice of default on March 18, 2010, alleging:

Payments have not been received by the Creditor, PHH Mortgage Services Corporation (hereinafter referred to as "PHH Mortgage"). The Debtor is past due for post-petition payments for February 1, 2010 and March 1, 2010, in the amount of $694.64 each, for a total payment arrears of $1,389.28, plus $100.00 for this Notice, less a credit of <$222.362>, for a total default of $1,266.96.

PHH withdrew the notice on May 20, 2010.

The chapter 13 trustee filed three post-confirmation motions to dismiss. The last one, filed June 8, 2010, resulted in Debtor converting her case to chapter 7 on September 27, 2010. Debtor had not completed her plan payments when the case was converted.

After conversion, the chapter 7 case proceeded quickly. The chapter 7 trustee held a § 341 meeting on October 29, 2010. He issued a report of no distribution on October 31, 2010. The discharge order and final decree were entered January 8, 2011. On that day, by operation of law Debtor's house was abandoned from the estate (§ 554(c)) and the automatic stay was terminated (§§362(c)).

The chapter 13 trustee filed her final report and account on December 14, 2010, which contains:

Summary of Disbursements to Creditors:

| Secured payments | Claim allowed | Principal paid | Interest paid |
|---|---|---|---|
| Mortgage ongoing | $61,321.06 | $0 | $0 |
| Mortgage arrearage | $12,249.35 | $11,302.89 | $2,155.69 |

PHH filed a foreclosure action in the Second Judicial District Court, Bernalillo County, on September 23, 2015, styled *PHH Mortgage Corporation v. Pettit*, Case No. D-202-CV-2015-

07553. In the foreclosure complaint PHH alleged that Debtor owed $6,163.78 as of September 2, 2015, consisting of:

| | |
|---|---|
| Principal: | $3,675.25 |
| Interest: | $ 140.87 |
| Late fees: | $ 150.60 |
| Property inspection fees: | $ 65.00 |
| Servicing fees: | $ 59.45 |
| Recoverable balance: | $2,072.61[5] |
| Total: | $6,163.78 |

Debtor answered the complaint, asserting that she had paid her mortgage in full. In addition, she reopened this case on August 3, 2018, asking the Court to disallow PHH's post-petition attorney's fees and costs and order PHH to apply all payments received as required by the plan, the order confirming the plan, and chapter 13.

## II. DISCUSSION

A. Whether Mortgagees Must Seek Allowance of Post-Petition Fees in Chapter 13.

When Debtor filed this case, the law was not clear what, if anything, an oversecured mortgagee must to collect post-petition attorney fees in a chapter 13 case.[6] One line of cases held that mortgagees must file applications for allowance of post-petition, pre-confirmation fees. *See In re Padilla*, 379 B.R. 643, 654 (Bankr. S.D. Tex. 2007) (to collect post-petition, pre-confirmation attorney fees, § 506(b) and Rule 2016 require the mortgagee to file an application for approval of

---

[5] This line item is for unpaid post-petition attorney's fees incurred during the chapter 13 case.

[6] An undersecured mortgagee is not entitled to collect post-petition attorney fees unless there is a surplus estate. *See U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989) (under the express language of § 506, an undersecured creditor is not entitled to recover its post-petition, pre-confirmation attorney's fees and related costs; *In re Fuentes*, 509 B.R. 832, 836 (Bankr. S.D. Tex. 2014) (an undersecured creditor secured solely by a debtor's principal residence is not entitled to payment of its attorney's fees incurred during the post-petition, pre-confirmation period).

the fees).[7] The *Padilla* court cited a number of cases in support: *In re Sanchez*, 372 B.R. 289 (Bankr. S. D. Tex. 2007); *In re Jones*, 366 B.R. 584 (Bankr. E.D. La. 2007); *In re Madison*, 337 B.R. 99 (Bankr. N.D. Miss. 2006); *Noletto v. NationsBanc Mortg. Corp. (In re Noletto)*, 281 B.R. 36, 47 (Bankr. S.D. Ala. 2000); *In re Powe*, 278 B.R. 539 (Bankr. S.D. Ala. 2002); *In re Tate*, 253 B.R. 653 (Bankr. W.D.N.C. 2000). One well-known commentator agreeed. *See* 4 Keith M. Lundin, Chapter 13 Bankruptcy, § 304.1 (3d ed. 2000) (oversecured mortgagees are required to apply for post-petition, preconfirmation fees and expenses). This line of cases does not require mortgagees to file applications for approval of post-confirmation fees and expenses.

The opposing view was that nothing in the Bankruptcy Code required oversecured mortgagees to file fee applications for any post-petition fees, whether incurred before or after confirmation. In *In re Padilla*, 389 B.R. 409 (Bankr. E.D. Pa. 2008), the bankruptcy court held:

> From a policy perspective, a rational, and perhaps even compelling case, can be made that the bankruptcy system should impose disclosure and/or other procedural requirements on a secured creditor's right to assess legal expenses arising postpetition in a case in which the creditor's claim is being treated and cured in a confirmed chapter 13 plan through 11 U.S.C. § 1322(b)(5). The debtor's performance of the postpetition contractual obligations takes place within the context of a court supervised financial rehabilitation process. Any assessments by the secured creditor for legal expenses incurred postpetition constitute part of the amount necessary to cure the default and directly impact the debtor's prospects for a successful chapter 13 rehabilitation. The failure to notify the debtor can have pernicious consequences.
>
> Nevertheless, whatever merits of the policy arguments may have, I find no source of law that imposes a requirement that a secured creditor provide a debtor with notice of postpetition legal expenses incurred by the creditor and chargeable to the debtor under the mortgage being treated under § 1322(b)(5) of the debtor's chapter 13 plan. In short, I am not persuaded that the policy argument is grounded sufficiently in either the Bankruptcy Code or the rules of court to afford it the force of law in this case.

---

[7] Unless otherwise noted, "Code" refers to the Bankruptcy Code, 11 U.S.C. § 101 et seq; "§" refers to a section of the Code; and "Rule" refers to the Federal Rules of Bankruptcy Procedure.

389 B.R. at 437 (footnote omitted); *see also In re Nelson*, 408 B.R. 394, 400-01 (citing and following the case).

The split in the case law was resolved by the adoption in 2011 of Bankruptcy Rule 3002.1, which, *inter alia*, requires mortgagees to file notices of all postpetition fees, expenses, and charges (pre- and post-confirmation) within 180 days after incurrence. *See* Rule 3002.1(c). A mechanism is provided to object to any claimed fees and expenses, and for bankruptcy courts to rule on the dispute. Similarly, Rule 3002(f)-(h) requires chapter 13 trustees to file notices of final cure payment and allows mortgagees to object and bankruptcy courts to rule. The 2011 advisory committee note on the rule says:

> In order to be able to fulfill the obligations of § 1322(b)(5), a debtor and the trustee must be informed of the exact amount needed to cure any prepetition arrearage, *see* Rule 3001(c)(2), and the amount of the postpetition payment obligations. If the latter amount changes over time, due to the adjustment of the interest rate, escrow account adjustments, or the assessment of fees, expenses, or other charges, notice of any change in payment amount needs to be conveyed to the debtor and trustee. Timely notice of these changes will permit the debtor or trustee to challenge the validity of any such charges, if necessary, and to adjust postpetition mortgage payments to cover any property claim adjustment.

B.   <u>Neither Chapter 13 nor the Confirmed Plan Apply to This Case</u>.

The Court need not decide which line of cases to follow because Debtor's conversion of her case to chapter 7 mooted the issue. The line of cases Debtor relies upon presupposes a pending chapter 13 case. In no-asset chapter 7 cases, mortgagees are not required to seek allowance of post-petition fees from the bankruptcy court, nor are they required to apply mortgage payments in any particular way.

In *Harris v. Viegelahn*, 135 S. Ct. 1829 (2015), the Supreme Court addressed what to do with funds held by a chapter 13 trustee after the case was converted to chapter 7. The court held that the debtor, rather than the chapter 7 trustee or the creditors, should get the money. The

-8-

Supreme Court found that when "a debtor exercises his statutory right to convert, the case is placed under Chapter 7's governance, and no Chapter 13 provision holds sway." *Viegelahn*, 135 S. Ct. at 1838. The court held that while chapter 13 and the confirmed plan required that the money be paid to creditors, they were superseded by the chapter 7 provisions upon conversion, which dictated that the money be paid to the debtor.

Section 1327(a) states: "the provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." After conversion, however, § 1327(a) no longer applies. *Viegelahn*; *see also In re Yao*, 548 B.R. 818, 822-23 (Bankr. D.N.M. 2016) ("§ 1327(a), which provides that a confirmed plan binds the debtor and all creditors to its provisions and gives the plan its res judicata effect, no longer applies following conversion from Chapter 13 to Chapter 7."); *In re Doyle,* 11 B.R. 110, 111 (Bankr. E.D. Pa. 1981) (after conversion to Chapter 7 "the chapter 13 plan and the order confirming that plan are no longer in force.").

This Court has followed *Viegelahn's* holding that chapter 13 does not apply after conversion to chapter 7. *See In re Beauregard*, 533 B.R. 826, 829-831 (Bankr. D.N.M. 2015) ("the Supreme Court held that none of the provisions of Chapter 13 apply in a case converted to Chapter 7"); *In re Yao*, 548 B.R. at 822 (to the same effect). Thus, under clear Supreme Court and other precedent, Debtor may not rely on any chapter 13 code section or the confirmed chapter 13 plan to argue that PHH's post-petition fees and expenses should be disallowed, or that PHH misapplied mortgage payments.

C.  After Conversion, the Loan Documents Once Again Govern.

After Debtor elected to convert her case, neither chapter 13 nor chapter 7 dictated what fees and expenses PHH could charge. Rather, the parties were once again governed by the loan

-9-
Case 05-19986-t7    Doc 107    Filed 04/30/19    Entered 04/30/19 15:08:44 Page 9 of 11

documents Debtor signed. Under those documents, Debtor may challenge PHH's right to charge any fee or expense in the pending foreclosure action, or the reasonableness thereof. The state court need not refer to the Bankruptcy Code or the failed plan when deciding the disputes.

Similarly, after conversion of this case, PHH was free to apply loan payments in accordance with the loan documents, rather than as directed by the chapter 13 plan and the Code. In *In re Carlton*, 437 B.R. 412 (Bankr. N.D. Ala. 2010), the bankruptcy court held:

> Thus, if the case is dismissed before the plan payments are completed or before the prepetition delinquency is otherwise paid, the mortgage creditor may recalculate the application of all payments received during the case (both the prepetition delinquency and postpetition maintenance installments) in accordance with the original mortgage contract, as if the bankruptcy had not intervened. *Maupin,* 384 B.R. at 428 ("If the case is dismissed or converted, then the order confirming the plan, and the plan, will no longer be binding on the creditor.").

437 B.R. at 418 n. 7; *see also In re Maupin*, 384 B.R. 421, 428 (Bankr. W.D. Va. 2007) ("If the case is dismissed or converted, then the order confirming the plan, and the plan, will no longer be binding on the creditor."); *see generally In re Houlik*, 481 B.R. 661, 672 (10th Cir. BAP 2012) (in a chapter 13 case, the requirements of § 524(i) regarding proper application of payments made to a creditor does not apply until plan completion).

For the reasons set forth above, PHH is not prohibited from charging Debtor for post-petition attorney fees and expenses if allowed by the mortgage, nor from applying the loan payments as allowed therein.

D.  <u>PHH Remains Bound by the Agreed Orders</u>.

Even though chapter 13 and the confirmed plan no longer "hold sway," not everything that happened during the chapter 13 case is null and void: the Agreed Orders are contractual in nature and remain binding on PHH. *See, e.g., In re Hart Oil & Gas, Inc.*, 2016 WL 7377049 at *3 (Bankr. D.N.M.) (stipulated order should be construed under applicable rules of contract interpretation);

*In re Hassen Real Estate Partnership*, 4 Fed. Appx. 537 (9th Cir. 2001) (a stipulated order "functions as a contract; as such, its terms must be analyzed under California's rules of contract interpretation"); *City of Covington v. Covington Landing Ltd. P'ship*, 71 F.3d 1221, 1227 (6th Cir. 1995) ("An agreed order, like a consent decree, is in the nature of a contract, and the interpretation of its terms presents a question of contract interpretation"); *In re Martinez*, 2015 WL 3814935, at *7 (Bankr. D.N.M.) (rules of contract interpretation apply to the stipulated order at issue). Thus, if the attorney fees, loan balances, or arrearage amounts in the Agreed Orders affect the calculation of Debtor's current obligation to PHH, PHH must honor them.

### III. CONCLUSION

After Debtor converted this case to chapter 7, neither the chapter 13 plan nor the chapter 13 code sections applied to PHH. Rather, the only remnants of the chapter 13 case still binding on PHH are the Agreed Orders. Otherwise, the note and mortgage govern how much PHH could charge Debtor and how the mortgage payments were to be applied. In view of this analysis, the Court will deny the motion for the most part, but will enter an order that PHH's positions taken in the dispute with Debtor are limited by the Agreed Orders.

/s/ David T. Thuma
_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: April 30, 2019
Copies to: counsel of record